GENERAL SERVICE BUREAU, INC., APPELLEE, V.
TRACI M. MOLLER, APPELLEE, AND
WEST TELEMARKETING CORPORATION, GARNISHEE-APPELLANT.
672 N.W.2d 41

Filed November 25, 2003. No. A-02-042.

Thomas J. Culhane and Patrick R. Guinan, of Erickson & Sederstrom, P.C., for garnishee-appellant.

Craig Q. McDermott for appellee General Service Bureau, Inc.

IRWIN, Chief Judge, and SIEVERS and MOORE, Judges.

MOORE, Judge.

## INTRODUCTION

General Service Bureau, Inc. (GSB), a collection agency, filed suit in the county court for Douglas County, Nebraska, against Traci M. Moller on behalf of creditors for unpaid bills. GSB

obtained a judgment against Moller for $5,492.58 and attempted to garnish Moller's wages at her place of employment, West Telemarketing Corporation (West). Because West failed to withhold and forward all garnishable funds, GSB filed an application for garnishee liability against West and eventually obtained a default judgment against West for $4,975.58. West filed a motion to vacate and set aside the judgment, which motion was denied by the county court. West appealed to the district court for Douglas County, which affirmed the decision of the county court. On appeal to this court, West asserts that the district court erred in affirming the county court's decision imposing garnishee liability on West, in not finding that the county court lacked in personam jurisdiction to enter the order of garnishee liability, and in not finding that the county court erred in admitting certain evidence. For the following reasons, we affirm.

## BACKGROUND

After obtaining a judgment against Moller, GSB filed a summons and order of garnishment in aid of execution that was served upon West by certified mail at West's office in Omaha, Nebraska, on January 18, 2000. Answers to garnishment interrogatories were prepared for West by Melanie Huckle on January 28 and returned to the court. In answering the garnishment interrogatories, West both indicated that Moller was currently employed by West and completed the calculations necessary to determine the portion of Moller's earnings subject to the garnishment order. On July 28, GSB filed an application, alleging that West had failed to forward all garnishable funds to the court and seeking an order determining West's garnishee liability. The certificate of service on the application indicates that it was served on Moller, the judgment debtor, by first-class mail. The court entered an order, dated August 30, 2000, directing that "upon due service with a copy of this Order," all parties were to appear on September 12 at 9 a.m. for a hearing to determine West's garnishee liability. The record before us contains a "Document Cover Sheet" directing the sheriff to "serve the attached document" (presumably the court's order setting the hearing to determine West's garnishee liability) on West at its Omaha address. The document cover sheet included this special instruction: "Serve Garn. Liab. Pers. to Highest Ranking

Officer-Hearing: 9-12-2000." The sheriff's return of service indicates that the sheriff served the document on "West Telemarketing" by leaving it "with Brian Winburn[,] the highest office[r] found," on September 6. The return of service did not further specify the location at which the document was left. The record contains a notice of continuance indicating that the September 12 garnishee liability hearing was continued to September 26 at 9 a.m. The certificate of service on the notice of continuance indicates that the notice was served on West at its Omaha address by first-class mail. No representative of West appeared at the hearing held on September 26, and the county court entered a default judgment against West on October 27 for $4,975.58 plus costs after finding that the "allegations of the Motion" were true.

In February 2001, West filed a motion to vacate and set aside the judgment and a motion to quash or stay the order of execution against West. West alleged that the county court lacked jurisdiction to enter the October 27, 2000, order because West was not properly served with the order setting the hearing to determine its garnishee liability.

West's motions were heard by the county court on March 1, 2001. At the hearing, West offered into evidence the affidavit of David Mussman, vice president and general counsel for West, without objection by GSB. Mussman stated in his affidavit that Brian Winburn, the West employee named on the sheriff's return of service, was a payroll specialist for West and not an officer, director, managing agent, or registered agent for West. Mussman further stated that the Omaha office where service had been made upon Winburn was neither West's registered office nor West's principal place of business.

GSB offered the affidavit of Robert Leavitt, the president of GSB. West objected to Leavitt's affidavit on hearsay and foundational grounds, but the affidavit was received into evidence by the court over West's objections. In the affidavit, Leavitt stated that it was among his duties as president of GSB to have the charge and possession of the various business records of GSB and that those records were kept in the ordinary course of business and were true and correct to the best of his knowledge. Leavitt stated that included in the business records of GSB was a document attached to his affidavit as "Exhibit 'A.'" Leavitt

indicated that the exhibit was the case notes or comments reflecting the history of contacts and communications between his office and a representative of West. Leavitt alleged that the notes or comments contained in the exhibit showed that West had "actual knowledge" of the hearing on the application for garnishee liability. The exhibit contains a listing of what appear to be various occurrences, such as contacts between West and GSB and court appearances, in the course of the garnishment proceedings. The exhibit contains four columns of information as follows: (1) initials, (2) dates, (3) times, and (4) abbreviated descriptions of certain occurrences in the course of the proceedings. The most relevant entries for the purpose of this appeal are presumably the two occurring on September 11, 2000, both identified by the initials "CQM." The first entry on that date, logged between "3:49P" and "3:50P," states:

REC'D CALL FROM [HUCKLE] OF WEST TELMKTG IN TEXAS- SHE SAYS SHE NEVER REC'D THE EXT OF LIEN- TOLD HER WE SENT IT TO OMAHA OFC AND THEY APPARENTLY DROPPED THE BALL- WE ARE ENT[ITLE]D TO MONEY IN MAY AND JUNE- SHE WILL PUT TOGETHER THE NUMBERS ON IT AND FAX IT TO ME AND I'LL CALL HER BACK- IF THE[Y] PRESENT AND PAY THE RIGHT #'S WE CAN RESOLVE IT[.]

The second entry on that date, logged between "4:41P" and "4:42P," states, "REC'D FAX FROM . . . HUCKLE OF WEST TELMKTG- WILL BE RECEIVING CHECK FOR 399.47- I CALLED HER AND TOLD HER I REC'D FAX AND WILL CONT HRG UNTIL 092600 @ 9 AM - ONCE WE GET CHECK I CAN NEGOTIATE IT AND CANCEL HRG." Subsequent entries on the exhibit detail, among other things, efforts by "CQM" to contact Huckle following the September 26 hearing in an attempt to obtain payment from West before having to file a judgment order.

The county court entered an order on March 12, 2001, denying West's motions to vacate and set aside the judgment and to quash or stay the order of execution against West. Although West appealed to the district court, it did not file a statement of errors with the district court within 10 days of filing the bill of

exceptions as required by Neb. Ct. R. of Cty. Cts. 52(I)(G) (rev. 2000). On August 20, West filed a motion for leave to file a statement of errors, which motion was heard by the district court on August 23 and granted over GSB's objection. West filed its statement of errors with the district court on September 28, asserting that the county court erred in (1) overruling West's objection to the affidavit of Leavitt, (2) denying West's motion to vacate the order of garnishee liability entered October 27, 2000, and (3) denying West's motion to quash or stay the order of execution. West also asserted that the county court lacked jurisdiction to enter the order of garnishee liability because GSB had failed to properly serve notice of the hearing on garnishee liability on West.

The district court heard West's appeal on November 5, 2001. The district court received into evidence the bill of exceptions from the county court proceeding. On March 7, 2002, the district court entered an order affirming the county court's October 27, 2000, order. The district court found that the record made in the county court supported the judgment rendered by the county court.

## ASSIGNMENTS OF ERROR

West asserts, combined, restated, and reordered, that the district court erred in (1) not finding that the county court lacked in personam jurisdiction to enter the order of garnishee liability, (2) not finding that the affidavit of Leavitt contained multiple hearsay statements and was not admissible into evidence, (3) affirming the decision of the county court imposing garnishee liability on West, and (4) not finding that the county court abused its discretion in not vacating the order of garnishee liability.

## STANDARD OF REVIEW

The district court and higher appellate courts generally review appeals from the county court for error appearing on the record. See *Suburban Air Freight v. Aust*, 262 Neb. 908, 636 N.W.2d 629 (2001). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Marshall v. Dawes Cty. Bd. of Equal.*, 265 Neb. 33, 654 N.W.2d 184 (2002).

However, in instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. *Id.*

■ On appeal from the district court, appellate review of a case tried below the district court is limited to those errors specifically assigned in the appeal to the district court and again assigned as error in an appeal to a higher appellate court. See *Suburban Air Freight, supra.*

■ In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Kinney v. H.P. Smith Ford,* 266 Neb. 591, 667 N.W.2d 529 (2003).

■ In reviewing a trial court's action in vacating or refusing to vacate a default judgment, an appellate court will uphold and affirm the trial court's action in the absence of an abuse of discretion. *Lee Sapp Leasing v. Ciao Caffe & Espresso, Inc.,* 10 Neb. App. 948, 640 N.W.2d 677 (2002). An abuse of discretion occurs when the trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

■ GSB asserts, as a preliminary matter, based on county court rule 52(I)(G), that our review of the present case should be limited to plain error because West failed to file its statement of errors within 10 days of filing the county court bill of exceptions in the district court. However, compliance with the requirements of rule 52(I)(G) is not a prerequisite to the district court's or an appellate court's jurisdiction over an appeal of a decision rendered by the county court. *Lindsay Ins. Agency v. Mead,* 244 Neb. 645, 508 N.W.2d 820 (1993). The Nebraska Supreme Court has stated that "rule [52(I)(G)] is simply a procedural tool designed to frame the issues to be addressed in the appeal to the district court." *Lindsay Ins. Agency,* 244 Neb. at 648, 508 N.W.2d at 823. When an appellant fails to file a statement of errors in compliance with rule 52(I)(G), an appellate court may at its discretion consider errors assigned in the appellate court,

provided that the record shows that those errors were also assigned in the district court. *Lindsay Ins. Agency, supra.*

Although West did not file a statement of errors within 10 days of filing the bill of exceptions in the district court, it did subsequently file a motion for leave to file a statement of errors, which motion was granted by the district court over GSB's objection. West then filed a statement of errors with the district court, prior to the hearing on its appeal. The issues identified in West's statement of errors clearly framed the issues to be addressed in the appeal to the district court, and it was within the district court's discretion to allow West to file its statement of errors and to consider the issues raised therein. The record before this court shows that the errors assigned by West in this court were also specifically assigned as error in the district court. Accordingly, we proceed to consider West's assigned errors on appeal to this court.

*Notice of Hearing.*

West asserts that the district court erred in not finding that the county court lacked in personam jurisdiction to enter the order of garnishee liability. West argues that the order setting the hearing for garnishee liability was not served on it as provided in Neb. Rev. Stat. § 25-1030.01 (Reissue 1995), which states:

> Upon filing an application for determination of liability of the garnishee, the *plaintiff shall give the garnishee* and the defendant in the original action *notice of the filing thereof and of the time and place of trial thereon. The notice shall be given within such time and in such manner as the court shall direct.*

(Emphasis supplied.)

West appears to argue that the county court did not "direct service" as prescribed in § 25-1030.01 because there is no order from the county court specifically directing service on West at its Omaha address and directing that service be made on a person who was not an officer, director, managing agent, or registered agent for West. West also suggests that service of notice of the hearing should have been performed pursuant to Neb. Rev. Stat. § 25-509.01 (Reissue 1995), pertaining to service of process on corporations.

First, with respect to West's argument that notice of the hearing should have been served in compliance with § 25-509.01, we note that the wording of § 25-1030.01 ("notice shall be given within such time and in such manner as the court shall direct") is different from the wording used in Neb. Rev. Stat. § 25-1011(1) (Reissue 1995), dealing with the initial garnishment, which provides that "[t]he summons and order of garnishment and the interrogatories in duplicate, a notice to judgment debtor form, and a request for hearing form *shall be served upon the garnishee in the manner provided for service of a summons in a civil action.*" (Emphasis supplied.) In comparing these statutory sections, we perceive that the Legislature clearly contemplated something different in § 25-1011(1) than it contemplated in § 25-1030.01, which just provides that "*notice*" is to be given in a manner directed by the court. Where the Legislature has intended for service to be executed as a summons in civil cases, it has specifically stated so within the statutes. *Ventura v. State*, 246 Neb. 116, 517 N.W.2d 368 (1994) (finding that service upon attorney of record was permissible under Neb. Rev. Stat. § 25-534 (Reissue 1989) where notice statute, Neb. Rev. Stat. § 20-333 (Reissue 1991), did not require any particular form of service). See, also, *Osborn v. Osborn*, 4 Neb. App. 802, 550 N.W.2d 58 (1996).

Based upon the foregoing, we reject West's argument that notice of a garnishee liability hearing, as set forth in § 25-1030.01, is required to be given in a manner consistent with service of process on corporations.

We next turn to the question of whether notice of the hearing on garnishee liability was given to West as directed by the court, pursuant to § 25-1030.01. The county court, in its August 30, 2000, order setting the garnishee liability hearing, directed that "upon due service with a copy of this Order," the parties were to appear in court on September 12 at 9 a.m. to determine West's garnishee liability. The document cover sheet instructed that service be made at the same Omaha address where the garnishment interrogatories had been served and to the "Highest Ranking Officer." However, this document cover sheet is not in the form of an order and is not signed by the judge. We cannot conclude that it was "direction" from the court as to the manner of notice

as contemplated in § 25-1030.01. Therefore, we are left with the court's order of August 30, setting the hearing on garnishee liability and requiring that "due service" of the order be made upon the parties, as the only direction from the court with respect to the manner of notice. The question thus becomes whether West received "due service" of the order, or due notice of the hearing on garnishee liability.

The initial garnishment summons and interrogatories were served by certified mail to West's Omaha office. The record does not indicate that West objected to service of the summons and interrogatories at its Omaha address, and West filed its answers in due course in the county court, thereby entering its appearance in the case. The garnishment interrogatory answers were signed and dated by Huckle. Huckle included her telephone number and extension but did not provide a mailing address or any information to indicate that communications with West should be directed to anywhere other than the Omaha office. With regard to the garnishee liability hearing, the return of service by the Douglas County sheriff shows that West was served with notice of the September 12, 2000, hearing by leaving a copy of the order setting the hearing for that date with Winburn on September 6. The record shows that Winburn is a payroll specialist, presumably working in West's Omaha office. The September 12 hearing was continued to September 26, and the notice of that continuance was sent to West's Omaha office by first-class mail.

There are no Nebraska appellate cases addressing the sufficiency of notice of garnishee liability proceedings or interpreting § 25-1030.01. Black's Law Dictionary 39 (6th ed. 1990) defines "[a]dequate notice" as "[n]otice reasonably calculated to apprise a person of an action, proceeding, or motion. Notice sufficient to permit an objection or defense. . . . Notice reasonably calculated, in all circumstances of given proceeding, to apprise all interested parties of action and opportunity to present their objections." "Due notice" is defined as

> [s]ufficient, legally prescribed notice. Notice reasonably intended, and with the likelihood of, reaching the particular person or public. No fixed rule can be established as to what shall constitute "due notice." "Due" is a relative term,

and must be applied to each case in the exercise of the discretion of the court in view of the particular circumstances. *Id.* at 500.

Neb. Rev. Stat. § 25-910 (Reissue 1995) provides:

Where notice of a motion is required, it must be in writing and shall state (1) the names of the parties to the action or proceeding in which it is to be made, (2) the name of the court or judge before [which or] whom it is to be made, (3) the place where and the day on which it will be heard, (4) the nature and terms of the order or orders to be applied for, and (5) if affidavits are to be used on the hearing, the notice shall state that fact. It shall be served a reasonable time before the hearing.

Section 25-534 (Reissue 1995) provides that orders, motions, notices, or other documents, except summonses, may be served upon an attorney of record for a party unless service upon the party himself or herself is ordered by the court. This statute further provides:

Every party appearing in an action without an attorney, and every attorney appearing in an action, shall designate on the record an address to which mail addressed to such party or attorney may be sent. Service by mail shall be by ordinary first-class mail addressed to such designated address, or if none is so designated, to the last-known address of such party or attorney. Service by mail is complete upon mailing.

We conclude that West received "due service" of notice of the continued hearing on garnishee liability held September 26, 2000, in that notice was sent by mail to the same address as that to which the initial summons and garnishment interrogatories, as well as notice of the garnishee liability hearing as originally set for September 12, were sent and in that the notice of the September 26 hearing contained the information required by § 25-910. As such, the notice was reasonably calculated to apprise West of the hearing.

*Leavitt's Affidavit.*

West next asserts that the district court erred in not finding that Leavitt's affidavit, including the attached exhibit, contained multiple hearsay statements, lacked foundation, and was

not admissible into evidence. GSB argues that the exhibit was admissible into evidence under the business records exception to the hearsay rule and that Leavitt's affidavit established the necessary foundational requirements. GSB also argues that the statements contained within the exhibit were not offered to prove the truth of the matter asserted and are thus not hearsay. See Neb. Rev. Stat. § 27-801(3) (Reissue 1995). GSB argues that the statements illustrate the existence of West's actual knowledge of the garnishment liability matter. Because of our finding that West was duly served with notice of the garnishee liability hearing, we need not address West's assertions regarding the admission of Leavitt's affidavit and exhibit. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Anderson v. Bellino*, 265 Neb. 577, 658 N.W.2d 645 (2003).

*Judgment of Garnishee Liability.*

West next asserts that the district court erred in affirming the decision of the county court imposing garnishee liability on West. West argues both that the notice of the hearing on garnishee liability was defective in terms of its content and that the notice was not properly served on West. We will not address West's first argument because West did not assign it as error. Errors argued but not assigned will not be considered on appeal. *State ex rel. City of Alma v. Furnas Cty. Farms*, 266 Neb. 558, 667 N.W.2d 512 (2003). As to West's second argument, we have already concluded that the service of notice on West was sufficient. Accordingly, we find no error in the district court's decision to affirm the decision of the county court imposing garnishee liability on West.

*Vacation of Order of Garnishee Liability.*

Finally, West asserts that the district court erred in not finding that the county court abused its discretion in not vacating the order of garnishee liability. A district court has the inherent authority to vacate or modify its decisions within the same term that the initial decision was rendered. *Lee Sapp Leasing v. Ciao Caffe & Espresso, Inc.*, 10 Neb. App. 948, 640 N.W.2d 677 (2002). The decision to vacate an order is within the discretion of the court. *Id.* It is the policy of the law to give a litigant full

opportunity to present his or her contention in court and for this purpose to give full relief against slight and technical omissions. *Id.* Where a judgment has been entered by default and a prompt application has been made at the same term to set it aside, with the tender of an answer or other proof disclosing a meritorious defense, the court should on reasonable terms sustain the motion and permit the cause to be heard on the merits. *Id.*

In *Lee Sapp Leasing*, this court concluded that the district court abused its discretion in denying the garnishee's motion for relief from the default judgment entered against it, because the garnishee filed the motion in term, promptly, and with a showing of a meritorious defense. This court stated that a meritorious defense is one which is worthy of judicial inquiry because it raises a question of law deserving some investigation and discussion or a real controversy as to the essential facts. *Id.* This court noted that in determining the liability of a garnishee to a garnishor, the test is whether, as of the time the summons and garnishment were served, the facts would support a recovery by the garnishor's judgment debtor against the garnishee. *Id.* This court reasoned that "[i]t is clear that a garnishee has a meritorious defense when it does not owe the judgment debtor anything and is not holding property of the judgment debtor." *Id.* at 960, 640 N.W.2d at 687. The garnishee submitted an affidavit at the hearing on its motion to vacate indicating that it did not hold and had not held, at any time relevant to the proceeding, any assets of the judgment debtor. Answers to the garnishment interrogatories in that case indicated that in response to the question " 'Do you have any property belonging to the judgment debtor, or credits or monies owed to the judgment debtor, whether due or not, other than earnings . . . described above?' " the garnishee answered no. *Id.* This court reasoned that a negative answer to that question would necessarily mean that the garnishee had no property of the judgment debtor and did not owe the judgment debtor anything on the day when the interrogatories were served on it.

In the present case, West did not tender proof of a meritorious defense with its motion to vacate the default judgment. West merely asserted that the county court lacked jurisdiction to enter the default judgment because West was not properly served with the order setting the hearing to determine garnishee liability. As

indicated above, we have already determined that West was properly served with notice of the hearing. We also find that unlike the answers to the garnishment interrogatories filed in *Lee Sapp Leasing*, the answers to the garnishment interrogatories in the present case do not establish that the garnishee has a meritorious defense to entry of the default judgment against it. In the "Wages" section of these garnishment interrogatories, West indicated that Moller, the judgment debtor, was currently in its employ, that it owed her money for wages on the date and at the time it was served with the garnishment, that it would owe her earnings within the next 60 days, and that she was paid biweekly. West specified her earnings for the pay period, indicated the amount it was required by law to deduct from her earnings, calculated her disposable earnings for the pay period, and calculated the portion of her earnings subject to the garnishment order. West also indicated that no portion of her wages was already being withheld pursuant to an order of continuing lien at the time the garnishment was served. In the "Other than Wages" section of the garnishment interrogatories, West did not respond to the question "Do you have property belonging to the judgment debtor, or credits or monies owed to the judgment debtor, whether due or not, other than the earnings described above?" At no time throughout this proceeding has West asserted that it does not owe Moller anything and is not holding property belonging to her. We conclude that the county court did not abuse its discretion in declining to vacate the judgment of garnishment liability and that the district court did not err in affirming the county court's decision in that regard.

## CONCLUSION

We conclude that West was duly served with notice of the hearing as required by § 25-1030.01. The district court did not err in affirming the decisions of the county court to impose garnishee liability on West and to refuse to set aside the default judgment.

AFFIRMED.