Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/11/2018 09:10 AM CDT

- 1 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
HOUSER v. AMERICAN PAVING ASPHALT
Cite as 299 Neb. 1

Tom Houser, appellant and cross-appellee,
v. American Paving Asphalt, Inc.,
appellee and cross-appellant.
___ N.W.2d ___

Filed February 16, 2018.    No. S-16-778.

1.  **Courts: Appeal and Error.** The district court and higher appellate
    courts generally review appeals from the county court for error appear-
    ing on the record.
2.  **Judgments: Appeal and Error.** When reviewing a judgment for errors
    appearing on the record, the inquiry is whether the decision conforms
    to the law, is supported by competent evidence, and is neither arbitrary,
    capricious, nor unreasonable.
3.  **Appeal and Error: Words and Phrases.** Plain error exists where there
    is an error, plainly evident from the record but not complained of at
    trial, which prejudicially affects a substantial right of a litigant and is of
    such a nature that to leave it uncorrected would cause a miscarriage of
    justice or result in damage to the integrity, reputation, and fairness of the
    judicial process.
4.  **Courts.** The district court has certain inherent powers by virtue of being
    a court.
5.  ____. Nebraska courts, through their inherent judicial power, have the
    authority to do all things reasonably necessary for the proper administra-
    tion of justice.
6.  **Courts: Judgments: Jurisdiction: Appeal and Error.** An intermedi-
    ate appellate court may timely modify its opinion, which is consistent
    with the generally recognized common-law rule that an appellate court
    has the inherent power to reconsider an order or a ruling until divested
    of jurisdiction.
7.  **Courts: Appeal and Error.** In cases where no statement of errors was
    filed, but the record showed that the district court considered an issue
    that was also assigned to a higher appellate court, the Supreme Court or
    the Court of Appeals may consider that issue.

8. **Courts: Time: Appeal and Error.** The district court has discretion to extend the time for filing a statement of errors.

9. \_\_\_\_: \_\_\_\_: \_\_\_\_. On appeal from the county court, a district court's ruling on a motion to extend the time for filing a statement of errors will be reviewed for an abuse of discretion.

Appeal from the District Court for Douglas County, Leigh Ann Retelsdorf, Judge, on appeal thereto from the County Court for Douglas County, Marcena M. Hendrix, Judge. Judgment of District Court affirmed in part, and in part reversed and remanded with directions.

David J. Koukol, Sharon A. Hansen, and Michael W. Milone, of Koukol & Johnson, L.L.C., for appellant.

James B. McVay, of Tiedeman, Lynch, Kampfe, McVay & Respeliers, for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Per Curiam.

## I. NATURE OF CASE

A homeowner brought a breach of contract action against the company that laid his asphalt driveway, after the driveway prematurely began to deteriorate. The county court entered judgment in favor of the homeowner, but on appeal, the district court significantly reduced the award. The parties dispute whether review of the county court's verdict is limited to plain error, because the asphalt company failed to timely file its statement of errors to the district court. The parties also dispute whether there was sufficient evidence that it was reasonable and necessary for the homeowner to contract for a stopgap repair of patchwork replacement of broken sections and, subsequently, for a 2-inch overlay of the entire driveway. Finally, the asphalt company contests attorney fees awarded to the homeowner in relation to the company's late production of documents that were the subject of an order to compel in county court.

## II. BACKGROUND

In 2008, Tom Houser entered into a written contract with American Paving Asphalt, Inc. (American Paving), to convert his 1,440-foot limestone driveway into an asphalt driveway. Houser had negotiated the contract with Mark Hall, the co-owner of American Paving. Hall had proposed a 3-inch asphalt overlay on top of the existing limestone, at a cost of $16,000.

According to Houser, after signing the contract with American Paving for a 3-inch overlay, he discussed with Hall concerns about the lack of traction during the winter on the steepest part of the driveway. According to Houser, Hall proposed traction indentations in about 300 feet of the driveway that would be made by raking through the asphalt. According to Houser, Hall proposed that they lay an extra 2 inches of asphalt depth where the traction strips would be placed.

There was no written contract regarding the traction strips, but it is undisputed that American Paving charged $1,500 for the added work. In addition, there was evidence that Hall had recommended to Houser that he seal-coat the driveway.

Several months after the installation of the asphalt overlay, Houser paid Hall an additional $1,500 to seal-coat the driveway and repair some cracks that had already occurred. The invoice for the repair and seal coat stated that American Paving "[w]ill fill any cracks that surface from sealcoating job at no cost to homeowner." In total, Houser paid American Paving $19,000 for the asphalt driveway.

More cracks continued to occur in the asphalt driveway. By 2010, larger chunks of the driveway began to break apart and cracks of various sizes were visible on the majority of the driveway. American Paving stopped responding to Houser's requests for repairs, and Houser sued American Paving in county court for breach of contract.

### 1. Evidence of Breach

Houser presented the expert testimony of Douglas Dreessen, a registered professional civil engineer, who opined that the

driveway was defective and did not substantially conform to the contract. Dreessen explained that there are two important elements to asphaltic cement paving. First, the subgrade must be compacted. Second, the thickness of the pavement must be adequate to support the type of traffic anticipated. With regard to thickness, Dreessen also testified that it is important for the pavement to be uniform so that there are not weak areas that will tend to give out.

Dreessen testified that absent instruction to the contrary, his goal as a professional engineer is to design asphalt driveways with a 20-year design life. Over American Paving's parol evidence objection, Houser also testified at trial that Hall told him the driveway would last at least 20 years. At trial, Hall denied making such a guarantee or that it was an industry standard.

Dreessen visually inspected the driveway in 2013. He observed numerous "alligatored" areas where failure was occurring. Given that the driveway was only 5 years old at the time of the inspection, this was considered a "premature failure" of the driveway. A report prepared by Dreessen's civil engineering firm noted significant weathering, oxidization, raveling, and wearing away of the surface.

Dreessen had his staff conduct tests to determine the pavement thickness and compaction. They bored into six different areas throughout the length of the driveway where it appeared to be thickest and not yet cracked or broken. The samples demonstrated a thickness ranging from 1¾ to 2½ inches, with an average measurement of 2 inches. Based on the results of the tests conducted, Dreessen opined that the cracking and distress of the asphalt driveway occurred because the asphalt was too thin and was placed on an inadequate base due to nonuniform and subgrade compaction.

Dreessen opined that Houser's driveway was not constructed in substantial compliance with the specifications of the contract. In his work, Dreessen regularly supervised contractors to ensure that their work was in substantial compliance with the

specifications and plans. In his experience, contract specifications for asphalt depth referred to the depth after it was rolled and compacted. He stated that the depth of the asphalt would never be measured before it was compacted, because "[w]hen we specify for an asphalt project, we need to be able to go back and verify what is on the plans . . . ." Further, Dreessen stated that the work did not comply with the specifications in the contract that it be graded and compacted to maximum strength.

## 2. EVIDENCE OF DAMAGES

Houser testified that for a couple of years after American Paving stopped making repairs, Houser sealed the cracks himself as they continuously appeared. Then, in 2012, Houser hired Asphalt Maintenance, Inc., to replace several large sections that had begun to break apart into larger chunks. Houser paid Asphalt Maintenance $5,110 for replacing the severely damaged sections of the driveway, plus $550 for sealing various cracks in the remaining lengths of the driveway. Houser had obtained more than one bid and chose Asphalt Maintenance because it had presented the lowest bid.

But Houser considered Asphalt Maintenance's work only a "stopgap measure before the winter of 2012." Houser was attempting only to address the areas of the driveway that were the most damaged and might come up in more large pieces when he used a snowplow. Over American Paving's objection, Houser testified that he thought that the repairs by Asphalt Maintenance were necessary.

After the 2012 repairs, the driveway continued to deteriorate. The 2013 report by Dreessen's firm noted that the oxidation and raveling observed at the time of the report would combine to allow for additional pathways for water and air to continue the weathering process and extend the cracking during freeze-thaw cycles. Houser also testified that with various repaired patches, the driveway "looked terrible" overall, with a variegated light-and-dark pattern.

As a solution to this continuing deterioration and the patchwork appearance due to previous repairs, Houser chose to have a 2-inch asphalt overlay placed on the entire length of the driveway. Houser generally indicated, over objection, that he had reached the 2-inch overlay solution after consultation with others. And Houser testified, over objection, that without adding a 2-inch overlay, he would have continued to have to pay to replace additional sections.

The asphalt company Houser contracted with charged $26,189.09 for the 2-inch overlay. Again, Houser had obtained more than one bid and chose the contractor who presented the lowest bid. Even with the 2-inch overlay, Houser anticipated additional cracking and costs associated with repairs in the future.

On cross-examination, Houser admitted that certain areas of the driveway, approximately 150 to 200 feet, were still in relatively good condition and not "defective." However, he believed that most of the driveway was unacceptable and he did not "feel like taking a roller coaster ride going up my driveway where its two inches higher and not."

At the time of trial, it had been about 1½ years since the overlay had been installed. Houser testified that there had been a noticeable change in the amount of deterioration. He said: "[It l]ooks like a nice, smooth asphalt driveway. It has a small handful of cracks in it in a couple of areas where apparently the deterioration underneath is continuing, but otherwise the driveway has held up very well."

Houser testified that he anticipated having to seal-coat the driveway. Houser explained that he had paid to seal-coat the original asphalt driveway per American Paving's instructions. Over American Paving's hearsay, relevance, and discovery objections, Houser testified that he had recently entered into a contract to seal the driveway at a cost of $3,250.

Houser submitted evidence of the cost of Dreessen's inspection, testing, and analysis, which was $1,705. He also submitted evidence of the cost of Dreessen's time testifying as an expert

witness, $2,886.10. Houser entered into evidence the costs of deposing an American Paving employee and Hall, $371.50 and $421.25, respectively, in preparation for trial. Houser sought court costs in the amount of $69. Houser asked for a total of $40,551.94 in damages. The court ordered the parties to submit briefs after trial. American Paving did not submit a brief.

### 3. VERDICT, ATTORNEY FEES, AND SANCTIONS

American Paving moved to disqualify the trial judge and for a mistrial on the ground that the judge had allegedly engaged in activities on her cell phone during trial. The court overruled American Paving's motion.

American Paving later filed a second motion to disqualify and for a mistrial, asserting the same conduct of the trial judge engaging with her cell phone during trial. But the second motion further alleged that Hall had filed a complaint with the Nebraska Commission on Judicial Qualifications, which complaint was under investigation. The court overruled the motion.

On June 17, 2015, the county court entered judgment in favor of Houser in the amount of $40,551.94. In its order, the court set a hearing for Houser's oral motion for attorney fees. After the judgment, Houser submitted an affidavit supporting costs and fees incurred with respect to the discovery delays, motion for sanctions, and the motions to disqualify. On September 22, the court ordered $1,514 in sanctions and attorney fees to be paid to Houser. On October 22, the court overruled American Paving's motion for new trial.

### 4. APPEAL TO DISTRICT COURT

American Paving filed a notice of appeal to the district court on November 10, 2015.[1] On that same date, it filed its praecipe for the bill of exceptions and transcript.

---

[1] See Neb. Rev. Stat. § 25-2729 (Reissue 2016).

### (a) Filing Statement of Errors
### Out of Time

American Paving did not timely file its statement of errors. Neb. Ct. R. § 6-1518 provides in relevant part:

> Within 10 days of filing the bill of exceptions in an appeal to the district court, the appellant shall file with the district court a statement of errors which shall consist of a separate, concise statement of each error a party contends was made by the trial court. Each assignment of error shall be separately numbered and paragraphed. Consideration of the cause will be limited to errors assigned and discussed, provided that the district court may, at its option, notice plain error not assigned.

Neb. Ct. R. § 6-1452(A)(7) (rev. 2011) is virtually identical.

The bill of exceptions in American Paving's appeal was filed with the district court on January 7, 2016. Court rules do not require that any notice be given to the parties when the bill of exceptions has been filed in the district court, and thus, the parties did not receive notice when the bill of exceptions was filed.

On February 1, 2016, the district court sent the parties a notice of intent to dismiss the appeal in the event that they failed to submit a proposed scheduling order within 30 days. On March 21, American Paving filed its brief with the district court and served it on Houser.

Thereafter, on April 15, 2016, American Paving filed a motion for leave to file a statement of errors out of time. A hearing was held on the motion on April 21. American Paving relied on Neb. Ct. R. § 6-1519, which allows courts to suspend applicable local rules upon good cause in order to prevent manifest injustice: "Upon the showing of good cause, a rule may be suspended in a particular instance in order to avoid a manifest injustice."

American Paving's attorney asserted that he did not learn until March 2, 2016, that the bill of exceptions had been filed. On that date, he "happened to check with the Clerk of the

District Court." The attorney explained that he was under the mistaken impression that the district court would notify him when the bill of exceptions had been filed. In an affidavit, the attorney averred that "in prior years," notice was sent to the parties when the bill of exceptions had been filed. Furthermore, American Paving's attorney explained that he did not realize the legal impact that failing to timely file a statement of errors could have.

American Paving's attorney argued that the rule regarding filing a statement of errors within 10 days of the filing of the bill of exceptions should be kept "in perspective":

> The rule is simply a procedural tool designed to frame the issues to be addressed in the appeal to the district court. It's not designed for anything other than to allow you, as the judge, as the sitting judge, and the Appellee, as a responder, to know what the heck I'm going to talk about at this hearing and what the issues are in terms of the appeal.

The court stated that it had sent out a notice of intent to dismiss on February 1, 2016. In light of that fact, the court found it "frustrating" that American Paving did not bother to inquire whether the bill of exceptions had been filed until March 2.

American Paving's attorney acknowledged that he could have checked every week to see whether the bill of exceptions had been filed and that he failed to do so. But as to the delay between the letter of February 1, 2016, and the filing of the statement of errors, the attorney argued that, either way, the April 15 filing of the statement of errors was late. On May 4, the court sustained American Paving's motion to file the statement of errors out of time.

### (b) Statement of Errors

In its statement of errors, American Paving asserted that the county court had erred by (1) finding that Houser offered sufficient evidence to show that American Paving breached the contract for installation of the asphalt driveway, (2) finding

that Houser offered sufficient evidence as to the reasonableness and necessity of the cost of repairs, (3) awarding certain costs to Houser that are not permitted by law, (4) failing to recuse herself as requested given her improper actions during trial and her bias in favor of Houser, (5) finding that sanctions against American Paving were appropriate, and (6) awarding attorney fees to Houser.

### (c) Order

The district court concluded that the county court did not abuse its discretion in denying American Paving's motion to disqualify and for a mistrial.

Citing to Neb. Ct. R. Disc. § 6-337, the district court found no error in the county court's order of attorney fees as a sanction for failing to produce the requested records in a timely fashion. Section 6-337(b) allows the court to order "reasonable expenses, including attorney fees, caused by the failure [to comply with a discovery order], unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."

The district court found there was competent evidence to support the county court's determination that American Paving had breached its contract with Houser and that such breach was the proximate cause of damage to Houser.

The court affirmed damages in the amount of only $5,660. The court found that the photographs and testimony established the necessity of the patchwork repair by Asphalt Maintenance of sections of the driveway that had broken into chunks. But it found the evidence insufficient to support the reasonableness and necessity of the 2-inch overlay.

The court concluded that the county court abused its discretion in awarding as costs[2] expenditures for expert reports and testimony. The court found that only $861.75 for depositions and court costs was properly awarded as costs. It remanded the

---

[2] See Neb. Rev. Stat. § 25-1708 (Reissue 2016).

case to the county court with directions to enter a judgment reflecting damages in the amount of $6,521.75.

Subsequently, a hearing was held on Houser's motion for attorney fees incurred in responding to American Paving's motion to file its statement of errors out of time and for a continuance. Houser submitted into evidence an affidavit supporting a total of $2,756.75 in costs and fees. The district court overruled the motion.

Houser appeals, and American Paving cross-appeals.

## III. ASSIGNMENTS OF ERROR

Houser assigns that the district court erred in (1) granting American Paving's motion for additional time to file its statement of errors and allowing anything other than plain error review, (2) failing to find that a 2-inch asphalt overlay was a reasonable procedure to make the driveway conform to the contract, and (3) ruling that the $26,189.09 cost of the overlay was unreasonable and unsupported by competent evidence.

On cross-appeal, American Paving assigns that the district court erred in finding (1) that there was sufficient evidence to sustain damages in the amount of $5,660 and (2) that the county court did not abuse its discretion in awarding to Houser $1,514 in attorney fees.

## IV. STANDARD OF REVIEW

[1,2] The district court and higher appellate courts generally review appeals from the county court for error appearing on the record.[3] When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[4]

---

[3] See, *Millard Gutter Co. v. Farm Bureau Prop. & Cas. Ins. Co.*, 295 Neb. 419, 889 N.W.2d 596 (2016). See, also, Neb. Rev. Stat. § 25-2733 (Reissue 2016).

[4] *Id.*

[3] Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.[5]

## V. ANALYSIS

### 1. PLAIN ERROR REVIEW

American Paving filed a statement of errors in the district court, but only after the district court granted its motion to extend the 10-day window established by the statement of errors rule.[6] In arguing that the district court erred in granting the extension, Houser relies upon the suspension rule[7] empowering a district court to "suspend[]" another uniform district court rule. In the district court, American Paving cited the suspension rule in support of its motion. Houser contends that the district court's review should have been limited to plain error.

But both parties' arguments are based on a flawed premise—that a district court, sitting as an intermediate appellate court, has no power to grant a motion to extend the time to file a statement of errors, except pursuant to the suspension rule. In the sections that follow, we will expose the flaws in that premise, review our case law, and apply the correct rule to settle the standard of review.

### (a) Flaws of Premise

The first flaw is the lack of any textual support in the statement of errors rule. It contains no language suggesting the

---

[5] *State ex rel. Unger v. State*, 293 Neb. 549, 878 N.W.2d 540 (2016); *Zwygart v. State*, 270 Neb. 41, 669 N.W.2d 362 (2005).

[6] § 6-1518.

[7] § 6-1519.

district court lacks the power to extend the 10-day window. It simply states:

> Within 10 days of filing the bill of exceptions in an appeal to the district court, *the appellant shall file* with the district court a statement of errors which shall consist of a separate, concise statement of each error a party contends was made by the trial court. Each assignment of error shall be separately numbered and paragraphed. Consideration of the cause will be limited to errors assigned and discussed, provided that the district court may, at its option, notice plain error not assigned. This rule shall not apply to small claims appeals.[8]

The 10-day provision in the first sentence is addressed to the appellant, not the district court. There is no language expressly or impliedly prohibiting a district court from extending the time.

Reading a prohibition into the rule would require us to add words to the third sentence, as if it read, "Consideration of the cause will be limited to errors assigned and discussed in a timely filed statement of errors, provided that the district court may . . . ." Just as it is not within the province of the courts to read a meaning into a statute or regulation that is not warranted by the language,[9] rules should be read likewise. We must limit the rule's meaning to its plain language.

The second flaw is the absence of any statutory basis for the premise. The right of appeal in Nebraska is purely statutory.[10] Statutes in chapter 25, article 27, establish the power of a district court to hear appeals from county court. And these statutes teach three lessons.

One dictates that the district court's standard of review shall be for "error appearing on the record made in the county

---

[8]  § 6-1518 (emphasis supplied).

[9]  See, *McCray v. Nebraska State Patrol*, 271 Neb. 1, 710 N.W.2d 300 (2006); *Utelcom, Inc. v. Egr*, 264 Neb. 1004, 653 N.W.2d 846 (2002).

[10]  *Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017).

court."[11] The statement of errors rule must be interpreted to operate within the context of these statutes. And our discussion of case law will demonstrate that we have done so.

Another permits this court to establish rules but does not support the premise. It authorizes the Nebraska Supreme Court to prescribe rules governing the "ordering, preparing, signing, filing, correcting, and amending of the bill of exceptions."[12] But this language does not permit us to artificially limit the district court's discretion to extend the time for filing of a statement of errors.

Another statute makes it clear that timely filing of a statement of errors cannot be deemed jurisdictional. It specifies that filing of the notice of appeal and deposit of the docket fee are the only steps required to vest the district court with jurisdiction of the appeal.[13] Our discussion of the case law will show that we have characterized the statement of errors rule in full accord with this statutory command.

Another flaw is the premise's inconsistency with other uniform district court rules. There are other sections of the Uniform District Court Rules of Practice and Procedure which specify procedures but where the district court undoubtedly has power to grant relief without relying on the suspension rule. For example, even though a rule requires that "citation of Nebraska cases shall include the . . . North Western Reporter citation,"[14] a court can surely exercise its discretion to accept a brief containing only citations to the Nebraska Reports or the Nebraska Appellate Reports. This illustrates the absurdity of applying the suspension rule to matters generally within the district court's discretion.

[4,5] The final flaw, and perhaps the most important one, is its implicit characterization of district courts. The district

---

[11] § 25-2733(1).

[12] § 25-2733(2).

[13] § 25-2729(2).

[14] Neb. Ct. R. § 6-1505(C).

court has certain inherent powers by virtue of being a court.[15] "The term 'inherent power of the judiciary' means that which is essential to the existence, dignity and functions of the court from the very fact that it is a court."[16] Nebraska courts, through their inherent judicial power, have the authority to do all things reasonably necessary for the proper administration of justice.[17]

[6] And when sitting as an intermediate appellate court, the district court has inherent power common to appellate courts. For example, in *State v. Hausmann*,[18] we reiterated that an intermediate appellate court may timely modify its opinion, which is "consistent with the generally recognized common-law rule that an appellate court has the inherent power to reconsider an order or [a] ruling until divested of jurisdiction." And the Nebraska Court of Appeals found no error in a case where the district court, sitting as an appellate court, accepted a supplemental bill of exceptions on rehearing.[19] Surely, an appellate court has inherent authority to regulate such things as timing of record preparation, extension of brief dates, and argument dates.

### (b) Lessons From Case Law

Finally, several lessons can be drawn from this state's reported decisions. First, and foremost, this court has never held that a district court lacks the power to extend the time for filing a statement of errors or that its power to do so is limited

---

[15] See, e.g., *Putnam v. Scherbring*, 297 Neb. 868, 902 N.W.2d 140 (2017); *In re Interest of Luz P. et al.*, 295 Neb. 814, 891 N.W.2d 651 (2017); *Jacob v. Nebraska Dept. of Corr. Servs.*, 294 Neb. 735, 884 N.W.2d 687 (2016); *In re Adoption of Jaelyn B.*, 293 Neb. 917, 883 N.W.2d 22 (2016); *Carrel v. Serco Inc.*, 291 Neb. 61, 864 N.W.2d 236 (2015); *Marcuzzo v. Bank of the West*, 290 Neb. 809, 862 N.W.2d 281 (2015).

[16] *In re Integration of Nebraska State Bar Ass'n*, 133 Neb. 283, 288, 275 N.W. 265, 267 (1937).

[17] *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), *disapproved on other grounds, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012).

[18] *State v. Hausmann*, 277 Neb. 819, 826, 765 N.W.2d 219, 225 (2009).

[19] *State v. Osborne*, 20 Neb. App. 553, 826 N.W.2d 892 (2013).

by the suspension rule. This is not surprising given that early on, we characterized the rule as "simply a procedural tool designed to frame the issues to be addressed in the appeal to the district court."[20]

Second, in cases where no statement of errors was filed and the district court reviewed for plain error, the higher appellate court likewise reviewed for plain error only.[21]

[7] Third, in cases where no statement of errors was filed, but the record showed that the district court considered an issue that was also assigned to a higher appellate court, the Supreme Court or the Court of Appeals may consider that issue.[22] Thus, in a case where the defendant did not file a statement of errors, the Court of Appeals looked to the "proceedings and argument before the district court"[23] to see whether a claimed error was mentioned. In another case, the defendant's notice of appeal from county court stated that she was appealing due to an excessive sentence.[24] Based on an assignment of error in the defendant's brief, the district court considered whether the county court abused its discretion in sentencing the

---

[20] *Lindsay Ins. Agency v. Mead*, 244 Neb. 645, 648, 508 N.W.2d 820, 823 (1993) (referring to predecessor version of current county court rule).

[21] See, *Federal Nat. Mortgage Assn. v. Marcuzzo*, 289 Neb. 301, 854 N.W.2d 774 (2014); *State v. Hays*, 253 Neb. 467, 570 N.W.2d 823 (1997); *In re Estate of Morse*, 248 Neb. 896, 540 N.W.2d 131 (1995); *State v. Harper*, 19 Neb. App. 93, 800 N.W.2d 683 (2011); *State v. Burns*, 16 Neb. App. 630, 747 N.W.2d 635 (2008); *State v. Fiedler*, 5 Neb. App. 629, 562 N.W.2d 380 (1997).

[22] See, *State v. Griffin*, 270 Neb. 578, 705 N.W.2d 51 (2005); *Lindsay Ins. Agency v. Mead, supra* note 20; *State v. Zimmerman*, 19 Neb. App. 451, 810 N.W.2d 167 (2012); *First Nat. Bank of Omaha v. Eldridge*, 17 Neb. App. 12, 756 N.W.2d 167 (2008); *State v. Boye*, 1 Neb. App. 548, 499 N.W.2d 860 (1993). See, also, *State v. Cardona*, 10 Neb. App. 815, 639 N.W.2d 653 (2002) (considering issue not raised in timely filed statement of errors, because district court's order showed it considered and ruled upon issue).

[23] *State v. Engleman*, 5 Neb. App. 485, 489, 560 N.W.2d 851, 856 (1997).

[24] *State v. Griffin, supra* note 22.

defendant. On appeal to this court, the State argued that appellate review was limited to plain error due to the defendant's failure to file a statement of errors. We disagreed with the district court that an assignment of error in a brief to the district court could constitute compliance with the rule, but we treated the issue of excessive sentence as assigned error because the defendant "specifically raised the issue of excessive sentence in her notice of appeal which was filed in the county court . . . and included in the transcript filed in the district court."[25]

Fourth, the review conducted when a statement of errors is filed, but not within the 10-day window, has varied. In a case where the district court reviewed the record for plain error only, the Court of Appeals similarly conducted a plain error review.[26] But in a case where the district court considered the errors raised in the untimely filed statement of errors, the Court of Appeals likewise considered those errors.[27] In that case, the district court granted a motion to file the statement of errors out of time, and the Court of Appeals stated that "it was within the district court's discretion to allow [the appellant] to file its statement of errors and to consider the issues raised therein."[28]

In an appeal in a criminal case, this court determined that "an exception to the rule . . . was necessarily in order."[29] There, the defendant's new counsel filed an untimely statement of errors which did not contain a claim of ineffectiveness of trial counsel. The Court of Appeals reversed the district court's judgment based on ineffectiveness of counsel. The State sought further review by this court, claiming that the Court of Appeals erred in considering ineffectiveness of counsel, because it was not contained in the statement of errors and because the statement

---

[25] *Id.* at 584, 705 N.W.2d at 57.

[26] *State v. Harlan*, 1 Neb. App. 184, 488 N.W.2d 374 (1992).

[27] *General Serv. Bureau v. Moller*, 12 Neb. App. 288, 672 N.W.2d 41 (2003).

[28] *Id.* at 295, 672 N.W.2d at 47.

[29] *State v. Gerstner*, 244 Neb. 508, 513, 507 N.W.2d 490, 493 (1993).

of errors was untimely filed. We reasoned that "[n]ew defense counsel's failure to assign the claim of ineffectiveness of counsel and the resultant delay in submitting the statement of errors were excusable."[30]

On the other hand, in *Miller v. Brunswick*,[31] this court refused to consider the errors assigned on appeal, stating that no errors were properly assigned to the district court due to the untimely filing of the statement of errors. There is no indication in *Miller* that the district court gave permission to file the untimely statement of errors.

[8] On the whole, our case law teaches that there is flexibility in applying the statement of errors rule. The district court has discretion to extend the time for filing a statement of errors.[32] It has discretion to consider errors brought to its attention in ways other than a timely filed statement of errors. And in light of the purpose of this "procedural tool," we see no reason to unduly constrict the district court's discretion. Of course, this discretion is not unlimited. And we provide some guidance for the exercise of this discretion.

The situation here is analogous to one where an appellant's brief in the Supreme Court or the Court of Appeals does not contain an assignments of error section. One of our court rules requires a section of the appellant's brief to contain, under an appropriate heading, "[a] separate, concise statement of each error a party contends was made by the trial court . . . ."[33] Like the district court's statement of errors rule, our rule cautions that "consideration of the case will be limited to errors assigned and discussed," but that "[t]he court may, at its option, notice a plain error not assigned."[34] In contrast to the district court's rule, our rule is grounded in statute, which

---

[30] *Id.*

[31] *Miller v. Brunswick*, 253 Neb. 141, 571 N.W.2d 245 (1997).

[32] See *General Serv. Bureau v. Moller, supra* note 27.

[33] Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2014).

[34] *Id.*

requires that "[t]he brief of appellant shall set out particularly each error asserted . . . ."[35]

We have never interpreted § 2-109(D)(1)(e) to leave us powerless to consider errors that were not properly presented. But we have repeatedly stated that we may proceed as though the party failed to file a brief entirely or, alternatively, may examine the proceedings for plain error.[36] We believe that the district court should have the same flexibility.

[9] Thus, we hold that on appeal from the county court, a district court's ruling on a motion to extend the time for filing a statement of errors will be reviewed for an abuse of discretion. Numerous situations are possible. For example, an appellant may recognize the omission before an opponent or the court has responded. An opponent may have responded, but only in a summary fashion. An opponent may have submitted a full brief relying on the omission. Or the omission may not have been noted until after the appeal was submitted to the district court. The specific circumstances should drive the court's exercise of discretion. And it is important whether the circumstances are rooted in the moving party's own neglect.

### (c) Resolution

Here, American Paving submitted a brief to the district court, which brief set out the errors it alleged were made by the county court. Houser then filed its responsive brief, evidently noting American Paving's failure to file a statement of errors. Only then did American Paving seek permission to file the statement of errors out of time.

The circumstances were ordinary and rooted in American Paving's own neglect. The bill of exceptions was filed on January 7, 2016. And on February 1, the district court's letter

---

[35] Neb. Rev. Stat. § 25-1919 (Reissue 2016).

[36] See, *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014); *In re Interest of Samantha L. & Jasmine L.*, 286 Neb. 778, 839 N.W.2d 265 (2013); *In re Interest of Jamyia M.*, 281 Neb. 964, 800 N.W.2d 259 (2011); *City of Gordon v. Montana Feeders, Corp.*, 273 Neb. 402, 730 N.W.2d 387 (2007).

notified the parties of the hearing date and briefing deadlines. While the letter did not expressly state that the bill of exceptions had been filed, at a minimum, it should have alerted the parties to inquire. American Paving admitted that it did not do so until March 2, and it provided no explanation not rooted in its own neglect. Although American Paving submitted a brief to the district court on March 21, even then it did not file the statement of errors. It was not until after Houser's brief was submitted that it dawned on American Paving to seek extension of the time. And by then, Houser had briefed the merits of the appeal.

We conclude that under these circumstances, the district court abused its discretion in granting the motion to extend the time for filing of a statement of errors. Because the district court abused its discretion, its review in this case should have been limited to plain error. In turn, our review of the county court's judgment will be limited to plain error.

### 2. HOUSER'S APPEAL

Houser appeals the district court's reversal of the county court's determination that $26,189.09, the cost of the 2-inch overlay, was recoverable as part of Houser's damages for the breach of contract. Houser asserts that under the proper, plain error standard of review, there was no plain error in this aspect of the county court's award. We agree and find that there was no plain error in the county court's assessment of $26,189.09 in damages for the 2-inch overlay. Thus, the district court erred in reversing that portion of the county court's verdict.

We note that Houser did not assign as error in this appeal the district court's reversal of the county court's inclusion in its determination of damages the amount of the cost for seal-coating the driveway. Nor did Houser assign as error the district court's reversal of the county court's award as costs Houser's expenditures for his expert reports and testimony. Finally, Houser did not assign as error the district court's denial of his motion for attorney fees incurred responding to American Paving's motion to file its statement of errors out of

time. He does not argue that we should revisit these aspects of the district court's opinion. Therefore, we do not.

### 3. AMERICAN PAVING'S CROSS-APPEAL

In its cross-appeal, American Paving asserts that the district court erred in affirming the county court's assessment as damages the cost of patchwork repairs prior to the 2-inch overlay and in affirming the award of $1,514 in sanctions in relation to American Paving's late production of discovery materials. As discussed, these errors were not properly assigned to the district court and we therefore limit our review to plain error.

We find no plain error in the county court's determination that the evidence supported as damages reimbursement for Houser's expenditures in patchwork repairs prior to the 2-inch overlay. Neither do we find plain error in its award of $1,514 in sanctions for American Paving's failure to timely turn over certain discovery materials. We accordingly affirm the district court's judgment inasmuch as it affirmed the award of $1,514 in discovery sanctions and $5,660 in repairs.

American Paving did not raise in its cross-appeal any issue pertaining to the district court's determination to affirm the county court's award of $861.75 in costs. We therefore also affirm this aspect of the district court's judgment.

### VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court with respect to the county court's determination that damages included $5,660 in patchwork repairs, that Houser should be awarded $1,514 as discovery sanctions, and that Houser should be awarded $861.75 in costs. We reverse the district court's judgment with respect to its reversal of the county court's determination that Houser's damages included $26,189.09 for the 2-inch overlay. We remand the cause to the district court with directions to remand to the county court with directions to enter a judgment in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.