Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/30/2021 08:08 AM CDT

- 662 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 29 Neb. App. 662

Hauptman, O'Brien, Wolf & Lathrop, P.C.,
appellee and cross-appellant, v. Auto-Owners
Insurance Company, appellant
and cross-appellee.

___ N.W.2d ___

Filed March 23, 2021.    No. A-20-516.

1. **Courts: Appeal and Error.** The district court and higher appellate courts generally review appeals from the county court for error appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. ____: ____. In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record.
4. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.
5. **Attorney Fees: Appeal and Error.** The determination of whether the common fund doctrine applies is a question of law, with respect to which an appellate court must reach a conclusion independent of the trial court's ruling.
6. **Courts: Time: Appeal and Error.** The district court has discretion to extend the time for filing a statement of errors.
7. ____: ____: ____. On appeal from the county court, a district court's ruling on a motion to extend the time for filing a statement of errors will be reviewed for an abuse of discretion.
8. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

- 663 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 29 Neb. App. 662

9. \_\_\_\_: \_\_\_\_. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

10. **Rules of the Supreme Court: Courts: Appeal and Error.** The purpose of Neb. Ct. R. § 6-1452(A)(7) (rev. 2011) is to specifically direct the attention of the reviewing court to precisely what error was allegedly committed by the lower court and to advise the nonappealing party of what is specifically at issue in the appeal.

11. **Courts: Appeal and Error.** In cases where no statement of errors was filed and the district court reviewed for plain error, the higher appellate court likewise reviews for plain error only.

12. \_\_\_\_: \_\_\_\_. In cases where no statement of errors was filed, but the record showed that the district court considered an issue that was also assigned to a higher appellate court, the Supreme Court or the Court of Appeals may consider that issue.

13. **Attorney Fees: Contracts.** Ordinarily, the right of an attorney to compensation for his or her services depends upon a contract of employment, express or implied. The common fund doctrine is a well-recognized exception to this general rule.

14. **Attorney Fees: Equity.** The common fund doctrine provides that an attorney who renders services in recovering or preserving a fund, in which a number of persons are interested, may in equity be allowed compensation out of the whole fund only where the attorney's services are rendered on behalf of, and are a benefit to, the common fund.

15. **Attorney Fees: Subrogation: Records.** In a case involving the common fund doctrine, the record must support a finding that the holder of the subrogation interest received substantial benefit from the services of the injured party's counsel.

16. **Subrogation: Words and Phrases.** Generally, subrogation is the right of one, who has paid the obligation which another should have paid, to be indemnified by the other.

17. **Equity: Insurance: Subrogation: Tort-feasors.** In the context of insurance, the right to equitable subrogation is generally based on two premises: (1) A wrongdoer should reimburse an insurer for payments that the insurer has made to its insured, and (2) an insured should not be allowed to recover twice from the insured's insurer and the tort-feasor.

18. \_\_\_\_: \_\_\_\_: \_\_\_\_: \_\_\_\_. Under principles of equity, an insurer is entitled to subrogation only when the insured has received, or would receive, a double payment by virtue of an insured's recovering payment of all or part of those same damages from the tort-feasor.

19. **Equity: Insurance: Subrogation.** Where an insurer seeks subrogation and the insured has not been made whole through his or her recovery,

- 664 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 29 Neb. App. 662

equitable principles necessitate disallowing the insurer to assert its subrogation right.

20. **Constitutional Law: Statutes.** Neb. Rev. Stat. § 44-3,128.01 (Reissue 2010) meets the standard of legislative reasonableness and is therefore constitutional and enforceable.

21. **Statutes: Legislature: Intent.** There are three types of preemption: (1) express preemption, (2) field preemption, and (3) conflict preemption. In all three cases, the touchstone of preemption analysis is legislative intent.

22. **Political Subdivisions: Statutes: Legislature: Intent.** Express preemption occurs when the Legislature has expressly declared in explicit statutory language its intent to preempt local laws.

23. ____: ____: ____: ____. Field preemption and conflict preemption arise in situations where the Legislature did not explicitly express its intent to preempt local laws, but such can be inferred from other circumstances.

24. ____: ____: ____: ____. In field preemption, legislative intent to preempt local laws is inferred from a comprehensive scheme of legislation.

25. **Political Subdivisions: Statutes.** When there is not comprehensive legislation on a subject, local laws may cover an authorized field of local laws not occupied by general laws, or may complement a field not exclusively occupied by the general laws.

26. **Statutes: Legislature.** The mere fact that the Legislature has enacted a law addressing a subject does not mean that the subject matter is completely preempted.

Appeal from the District Court for Douglas County, Peter C. Bataillon, Judge, on appeal thereto from the County Court for Douglas County, Craig Q. McDermott, Judge. Judgment of District Court affirmed.

Michael T. Gibbons and Raymond E. Walden, of Woodke & Gibbons, P.C., L.L.O., for appellant.

Joshua J. Yambor and Stevie Chesterman, of Hauptman, O'Brien, Wolf & Lathrop, P.C., for appellee.

Pirtle, Chief Judge, and Moore and Arterburn, Judges.

Moore, Judge.

## INTRODUCTION

Auto-Owners Insurance Company (the insurer) appeals from the order of the district court for Douglas County,

- 665 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 29 Neb. App. 662

which affirmed the Douglas County Court's order granting summary judgment to Hauptman, O'Brien, Wolfe & Lathrop, P.C. (the law firm). On appeal, the insurer asserts that Neb. Rev. Stat. § 44-3,128.01 (Reissue 2010) renders the common fund doctrine inapplicable to the law firm's recovery in this case. The law firm has cross-appealed, asserting that the district court abused its discretion in granting the insurer an extension of time to file its statement of errors. Finding no error, we affirm.

## BACKGROUND

On April 13, 2017, Charlyn Imes was injured in a motor vehicle accident caused by the negligence of a third party (the tort-feasor). Imes was insured by the insurer, and under the medical payments provision of that policy, the insurer paid Imes $1,000 as a result of the accident (which was the policy limit for medical expenses arising from personal injury suffered by Imes during a covered accident). Imes retained the law firm to pursue her claim against the tort-feasor. After 9 months of work by the law firm, the tort-feasor's insurance company settled with Imes for $48,200, an amount less than the policy limit of the underlying tort-feasor, and Imes released the tort-feasor.

During the settlement process, the insurer sent a letter to the tort-feasor's insurance company, asserting a subrogation interest in any settlement or judgment involving Imes and the tort-feasor, to the extent of the $1,000 in benefits paid to Imes by the insurer, and advising, "We will not honor any requests for attorney fees unless we expressly request their assistance in pursuit of our subrogation." The tort-feasor's insurer acknowledged receipt of the subrogation interest letter, but a check for the $1,000 was sent to the law firm rather than to the insurer. The law firm asked the insurer to reduce its subrogation lien pursuant to the common fund doctrine and accept only two-thirds of its $1,000 interest. The insurer advised, however, that it would not accept less than the full $1,000 as reimbursement of its medical payments coverage on behalf of Imes and

that the law firm was not to represent the insurer's subrogation interest.

On July 25, 2018, the law firm filed a complaint in the county court against the insurer. The law firm alleged that its work in obtaining a recovery on behalf of Imes, including the insurer's subrogation interest in the claim, created a common fund; that the insurer benefited from the law firm's work; and that a fair and customary attorney fee pursuant to Nebraska common law was one-third of the amount recovered per the law firm's fee agreement with Imes. The law firm alleged that it had made demand upon the insurer for the fair and customary attorney fee, which the insurer had failed, refused, and neglected to pay. Accordingly, the law firm sought recovery against the insurer for $333.33 plus costs.

The insurer answered and filed a counterclaim, seeking a declaration that it was entitled to the full $1,000 under § 44-3,128.01 and the terms of the policy.

The parties filed opposing motions for summary judgment, which were heard by the county court on January 9, 2020. The court received various documentary exhibits offered by the parties, including copies of the insurance policy, certain correspondence, pleadings, discovery responses, and an affidavit from one of the attorneys in the law firm documenting work done in obtaining the recovery for Imes. In addition to the information already set forth above, we note the following provision in the insurance policy issued by the insurer to Imes, under the section entitled "Preserve Our Right to Recover Payments":

> **a.** If **we** make a payment under this policy and the person to or for whom payment is made has a right to recover damages from another, **we** will be entitled to that right. That person shall do everything necessary to transfer that right to **us** and shall do nothing to prejudice it.
>
> **b.** The person to or for whom payment is made under Uninsured Motorist Coverage and/or Underinsured Motorist Coverage must hold in trust for **us** his rights

- 667 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 29 Neb. App. 662

of recovery against any legally liable person. He must do all that is proper to secure such rights and must do nothing to prejudice them. He must take any required action in his name to recover damages and reimburse **us** out of any proceeds to the extent of **our** payment.

(Emphasis in original.)

On March 9, 2020, the county court entered an order finding no genuine issue of material fact. It granted the law firm's motion for summary judgment, entered judgment in the law firm's favor for $333.33, and denied the insurer's summary judgment motion.

On March 17, 2020, the insurer filed a notice of appeal in the county court, indicating its intent to appeal the county court's summary judgment ruling to the district court. The bill of exceptions from the county court proceeding was filed in the district court on April 14. On May 7, the insurer filed a statement of errors in the district court, asserting that the county court erred in granting summary judgment to the law firm and denying summary judgment to the insurer. Specifically, the insurer asserted that the county court erred by adopting the law firm's position with respect to the common fund doctrine and failing to recognize the preemptive effect of § 44-3,128.01.

On May 15, 2020, the law firm filed a motion to strike the insurer's statement of errors as untimely, because it had not been filed within 10 days of the filing of the bill of exceptions in the district court as required by Neb. Ct. R. § 6-1452(A)(7) (rev. 2011). The insurer subsequently filed a motion for extension of time to file its statement of errors, seeking to extend the time for filing to the date on which its statement of errors was actually filed.

On June 15, 2020, the district court heard the insurer's appeal from the county court proceedings and the parties' motions with respect to the insurer's statement of errors. During argument with respect to the parties' motions, the insurer's attorney admitted that during the course of filing his appeal, he "did not find" the rule with respect to when the statement of errors should be filed. The district court granted

- 668 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 29 Neb. App. 662

the insurer's motion for the extension of time, implicitly denying the law firm's motion to strike. Although the bill of exceptions was not marked as an exhibit, the court received it from the county court proceedings, which had been filed in the district court, and heard argument with regard to the appeal.

On June 26, 2020, the district court entered an order affirming the county court's summary judgment order. The district court first noted that the only effort by the insurer to obtain its subrogation claim of $1,000 was to send the tort-feasor's insurance carrier a letter demanding that it be paid the $1,000, while the law firm spent 9 months in efforts that resulted in a settlement for Imes and which benefited the insurer. The court determined that § 44-3,128.01 did not prevent the application of the common fund doctrine to allow the law firm to recover one-third of the insurer's $1,000 subrogation interest. The court observed that § 44-3,128.01 preserved the subrogation rights of insurers for medical payments and stated that preservation of the insurer's subrogation rights was not at issue in this case. The court stated that § 44-3,128.01 did not in any way limit the common fund doctrine, which "simply allows equity and fairness to compensate the attorney for providing a benefit to the subrogation insurance carrier."

The insurer subsequently perfected its appeal to this court, and the law firm cross-appealed.

ASSIGNMENTS OF ERROR

The insurer asserts that the district court (1) erred in affirming the county court's order granting summary judgment to the law firm and denying summary judgment to the insurer and (2) erred as a matter of law by applying the common fund doctrine to the law firm's retention of a portion of the amount of medical payments reimbursement and failing to recognize the preemptive effect of § 44-3,128.01.

On cross-appeal, the law firm asserts that the district court abused its discretion when it granted the insurer's motion for an extension of time to file its statement of errors.

- 669 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 29 Neb. App. 662

## STANDARD OF REVIEW

[1,2] The district court and higher appellate courts generally review appeals from the county court for error appearing on the record. *Schaefer Shapiro v. Ball*, 305 Neb. 669, 941 N.W.2d 755 (2020). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

[3-5] However, in instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. *Panhandle Collections. v. Singh*, 28 Neb. App. 924, 949 N.W.2d 554 (2020). Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court. *Egan v. County of Lancaster*, 308 Neb. 48, 952 N.W.2d 664 (2020). The determination of whether the common fund doctrine applies is a question of law, with respect to which an appellate court must reach a conclusion independent of the trial court's ruling. *Simon v. City of Omaha*, 267 Neb. 718, 677 N.W.2d 129 (2004).

[6,7] The district court has discretion to extend the time for filing a statement of errors. *Houser v. American Paving Asphalt*, 299 Neb. 1, 907 N.W.2d 16 (2018). On appeal from the county court, a district court's ruling on a motion to extend the time for filing a statement of errors will be reviewed for an abuse of discretion. *Id.*

[8,9] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Fuelberth v. Heartland Heating & Air Conditioning*, 307 Neb. 1002, 951 N.W.2d 758 (2020). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable

- 670 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 29 Neb. App. 662

inferences deducible from the evidence. *First State Bank Neb. v. MP Nexlevel*, 307 Neb. 198, 948 N.W.2d 708 (2020).

## ANALYSIS

*Statement of Errors.*

We first address the law firm's cross-appeal, as resolution of that issue potentially affects this court's standard of review. The law firm asserts that the district court abused its discretion when it granted the insurer's motion for an extension of time to file its statement of errors. The law firm acknowledges that granting such a motion is within the court's discretion but argues that the court abused its discretion in this case because the failure to file a statement of errors within 10 days of filing the bill of exceptions as required by § 6-1452(A)(7) was due to the insurer's negligence. In so arguing, the law firm relies on *Houser v. American Paving Asphalt, supra*.

[10-12] The purpose of § 6-1452(A)(7) is to specifically direct the attention of the reviewing court to precisely what error was allegedly committed by the lower court and to advise the nonappealing party of what is specifically at issue in the appeal. *State v. Zimmerman*, 19 Neb. App. 451, 810 N.W.2d 167 (2012). Ordinarily, in cases where no statement of errors was filed and the district court reviewed for plain error, the higher appellate court likewise reviews for plain error only. *TransCanada Keystone Pipeline v. Tanderup*, 305 Neb. 493, 941 N.W.2d 145 (2020). In cases where no statement of errors was filed, but the record showed that the district court considered an issue that was also assigned to a higher appellate court, the Supreme Court or the Court of Appeals may consider that issue. *Houser v. American Paving Asphalt, supra*. See, also, *State v. Scherbarth*, 24 Neb. App. 897, 900 N.W.2d 213 (2017) (despite failure to file particular statement of errors in district court, higher appellate court may still consider errors actually considered by district court).

In *Houser v. American Paving Asphalt*, 299 Neb. 1, 907 N.W.2d 16 (2018), the Nebraska Supreme Court considered

- 671 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 29 Neb. App. 662

a situation where the appellant filed a statement of errors in the district court, but it did so only after the district court granted its motion to extend the 10-day period. Before the district court, the appellant relied on Neb. Ct. R. § 6-1519, which allows courts to suspend applicable local rules upon good cause in order to prevent manifest injustice. On further appeal, the Nebraska Supreme Court determined that it was not necessary to rely on the suspension rule, because the power to extend the filing time was within the district court's discretion. The Supreme Court observed:

> Numerous situations are possible. For example, an appellant may recognize the omission before an opponent or the court has responded. An opponent may have responded, but only in a summary fashion. An opponent may have submitted a full brief relying on the omission. Or the omission may not have been noted until after the appeal was submitted to the district court. The specific circumstances should drive the court's exercise of discretion. And it is important whether the circumstances are rooted in the moving party's own neglect.

*Houser v. American Paving Asphalt*, 299 Neb. at 19, 907 N.W.2d at 29.

The Supreme Court in *Houser* determined that the district court abused its discretion in granting the motion for extension of filing time under the circumstances present in that case, because the appellant had not provided an explanation for its failure to file a timely statement of errors that was not rooted in its neglect. The bill of exceptions there was filed on January 7, 2016. On February 1, the district court notified the parties of the hearing date and briefing deadlines. The appellant did not inquire until March 2 whether the bill of exceptions had been filed, and it filed a brief on March 21. However, it did not file its statement of errors or seek a time extension until after the opposing party had filed its brief. The Supreme Court found that the district court abused its discretion in granting the motion for an extension and that review by the district

- 672 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 29 Neb. App. 662

court should have been limited to plain error, and it accordingly limited its own review to plain error.

Although the insurer in this case admitted that it simply did not find the rule requiring filing of the statement of errors within 10 days of the filing of the bill of exceptions, the circumstances are different from those presented in *Houser*. The single issue before the county court in the summary judgment proceedings was whether § 44-3,128.01 prevented the law firm from recovering one-third of the insurer's subrogation interest pursuant to the common fund doctrine. The county court granted summary judgment in the law firm's favor, and the insurer appealed to the district court. The bill of exceptions was filed in the district court on April 14, 2020, and the statement of errors was filed on May 7 by the insurer. The insurer filed its motion for extension of time on May 19, after the law firm filed its motion to strike the statement of errors on May 15. However, there is nothing in the record on appeal to indicate that the law firm filed anything prior to when the statement of errors was filed, relying on an understanding of the issues on appeal as anything other than what was expressed in the insurer's statement of errors. We note that in its motion for extension of time, the insurer references certain limitations with respect to "In-Person Access to the Douglas County Courthouse because of the COVID-19 pandemic" and states that because the bill of exceptions was not available "through the Nebraska Justice system," the statement of errors was filed "without reference to the bill of exceptions so that the appeal could move along with hearing of the matter coming up." Of course, this does not explain the insurer's failure to locate the relevant court rule with respect to the timing of the filing of the statement of errors. Regardless, given the limited nature of the issue on appeal and no evidence that the law firm relied on some other understanding of the issues than that presented in the statement of errors that was filed, we cannot say that the district court abused its discretion in granting the time extension under the circumstances in this case. And,

- 673 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 29 Neb. App. 662

clearly, the district court did consider the issue presented by the statement of errors. Therefore, we have considered the errors assigned on appeal to this court and have reviewed them according to the standards set forth in the standard of review section above.

*Summary Judgment.*

The question presented by the insurer's appeal is whether the medical payment reimbursement statute, § 44-3,128.01, abrogates, preempts, or abolishes the common fund doctrine. The insurer argues that an insurer who makes medical payments under an automobile liability policy is entitled to full reimbursement upon settlement of the type involved in this case, without reduction for the attorney fees of the insured's lawyers. In other words, it argues that § 44-3,128.01 preempts the equitable common fund doctrine inside of the field staked out by the statute and thus prevents the law firm from recovering an attorney fee from the insurer's $1,000 subrogation interest.

[13-15] Ordinarily, the right of an attorney to compensation for his or her services depends upon a contract of employment, express or implied. *In re Guardianship & Conservatorship of Tucker*, 9 Neb. App. 17, 606 N.W.2d 868 (2000). The common fund doctrine is a well-recognized exception to this general rule. *In re Estate of Stull*, 8 Neb. App. 301, 593 N.W.2d 18 (1999). The common fund doctrine provides that an attorney who renders services in recovering or preserving a fund, in which a number of persons are interested, may in equity be allowed compensation out of the whole fund only where the attorney's services are rendered on behalf of, and are a benefit to, the common fund. See *Walentine, O'Toole v. Midwest Neurosurgery*, 285 Neb. 80, 825 N.W.2d 425 (2013). See, also, *Summerville v. North Platte Valley Weather Control Dist.*, 171 Neb. 695, 107 N.W.2d 425 (1961) (where one has gone into court of equity and, taking risk of litigation on oneself, has created or preserved or protected fund in which others are entitled to share, such others will be required to contribute

- 674 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 29 Neb. App. 662

their share to reasonable costs and expenses of litigation, including reasonable fees to litigant's counsel). In a case involving the common fund doctrine, the record must support a finding that the holder of the subrogation interest received substantial benefit from the services of the injured party's counsel. *Hauptman, O'Brien v. Milwaukee Guardian*, 7 Neb. App. 60, 578 N.W.2d 83 (1998). The present case involves a subrogation interest, and both the Nebraska Supreme Court and this court have determined that the common fund doctrine generally applies in situations presenting a subrogation interest. See, e.g., *In re Guardianship & Conservatorship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352 (1994); *In re Estate of Stull, supra*.

[16-18] Generally, subrogation is the right of one, who has paid the obligation which another should have paid, to be indemnified by the other. *SFI Ltd. Partnership 8 v. Carroll*, 288 Neb. 698, 851 N.W.2d 82 (2014). In the context of insurance, the right to equitable subrogation is generally based on two premises: (1) A wrongdoer should reimburse an insurer for payments that the insurer has made to its insured, and (2) an insured should not be allowed to recover twice from the insured's insurer and the tort-feasor. *Id.* Under principles of equity, an insurer is entitled to subrogation only when the insured has received, or would receive, a double payment by virtue of an insured's recovering payment of all or part of those same damages from the tort-feasor. *Blue Cross and Blue Shield v. Dailey*, 268 Neb. 733, 687 N.W.2d 689 (2004).

[19,20] Where an insurer seeks subrogation and the insured has not been made whole through his or her recovery, equitable principles necessitate disallowing the insurer to assert its subrogation right. *Id.* However, § 44-3,128.01 permits automobile liability policies to provide for pro rata subrogation in the situation where the insured did not fully recover his or her loss. Section 44-3,128.01 states:

> A provision in an automobile liability policy or endorsement which is effective in this state and which grants the insurer the right of subrogation for payment

- 675 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 29 Neb. App. 662

of benefits under the medical payments coverage por-
tion of the policy shall be valid and enforceable, except
that if the claimant receives less than actual economic
loss from all parties liable for the bodily injuries, subro-
gation of medical payments shall be allowed in the same
proportion that the medical expenses bear to the total
economic loss. For purposes of this section, it shall be
conclusively presumed that any settlement or judgment
which is less than the policy limits of any applicable
liability insurance coverage constitutes complete recovery
of actual economic loss.

The Nebraska Supreme Court has previously found that
§ 44-3,128.01 meets the standard of legislative reasonableness
and is therefore constitutional and enforceable. *Ploen v. Union
Ins. Co.*, 253 Neb. 867, 573 N.W.2d 436 (1998).

In this case, the insurer argues that the district court lim-
ited explanation of its decision in favor of the law firm to
the positive attributes of the common fund doctrine. The
insurer argues that while the district court acknowledged the
insurer's assertion that the common fund doctrine is incon-
sistent with § 44-3,128.01, it failed to address the insurer's
argument that the statute preempts the common fund doctrine.
The insurer argues that the district court essentially declared
without supporting reasoning that the doctrine survives the
statute and moved to the conclusion of affirming the county
court's ruling.

[21-23] There are three types of preemption: (1) express
preemption, (2) field preemption, and (3) conflict preemp-
tion. In all three cases, the touchstone of preemption analysis
is legislative intent. *Malone v. City of Omaha*, 294 Neb. 516,
883 N.W.2d 320 (2016). Express preemption occurs when the
Legislature has expressly declared in explicit statutory lan-
guage its intent to preempt local laws. *Id.* Field preemption and
conflict preemption arise in situations where the Legislature
did not explicitly express its intent to preempt local laws,
but such can be inferred from other circumstances. *Id.* The

- 676 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 29 Neb. App. 662

insurer argues that field preemption is the type of preemption at issue here.

[24-26] In field preemption, legislative intent to preempt local laws is inferred from a comprehensive scheme of legislation. *Id.* When there is not comprehensive legislation on a subject, local laws may cover an authorized field of local laws not occupied by general laws, or may complement a field not exclusively occupied by the general laws. *Id.* The mere fact that the Legislature has enacted a law addressing a subject does not mean that the subject matter is completely preempted. *Id.*

The insurer argues that § 44-3,128.01 has "fully occupied the narrow field of enforcement of automobile medical payments subrogation clauses in spite of otherwise applicable equitable principles" and that "the statute's requirement of enforcement of subrogation clauses providing for full reimbursement conflicts with the equity-based common fund rule, as well as the equitable rule disallowing any reimbursement until the insured has been made whole." Brief for appellant at 15. The insurer argues further that the common fund doctrine cannot be applied in this case "without also disregarding the statutory directive to enforce [the insurer's] endorsement clause requiring full reimbursement of its subrogated medical expenses payments under the admitted circumstances of this case." *Id.* We disagree.

The issue here is not the insurer's right to recover its subrogated medical payments under the circumstances of this case. That right is clearly guaranteed by not only the insurance policy in question, but also by § 44-3,128.01. What is at issue is the law firm's entitlement to recover a reasonable attorney fee for its efforts in securing that subrogated medical payment. This is not a "field" addressed by the statute, which states that an insurer is entitled to full recovery of its medical payments when policy limits have not been received (as opposed to a pro rata share when they have and not all economic losses have been recovered). The law firm asserts that neither the text

- 677 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 29 Neb. App. 662

of the statute nor its legislative history mentions the common fund doctrine and that it accordingly cannot stand as a basis for expanding the subrogation rights of insurers. We agree that the statute is silent with respect to attorney fees, and there is nothing in Nebraska case law to indicate that the statute has preempted the common fund doctrine. There is no ambiguity in the statute. It simply does not address the issue of attorney fees. See *In re Estate of Adelung*, 306 Neb. 646, 947 N.W.2d 269 (2020) (absent ambiguity, court does not consult legislative history; appellate court will not resort to interpretation to ascertain meaning of statutory words that are plain, direct, and unambiguous). The insurer does not argue that it did not receive a substantial benefit from the services of the law firm in securing its subrogation interest. Finding no error, we affirm the order of the district court, which affirmed the county court's grant of summary judgment in the law firm's favor.

## CONCLUSION

We affirm the district court's order affirming the county court's grant of summary judgment in the law firm's favor.

Affirmed.