Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/10/2021 08:08 AM CST

Hauptman, O'Brien, Wolf & Lathrop, P.C.,
appellee and cross-appellant, v. Auto-Owners
Insurance Company, appellant
and cross-appellee.

Filed September 17, 2021.    No. S-20-516.

1. **Attorney Fees: Equity.** The common fund doctrine provides that an attorney who renders services in recovering or preserving a fund, in which a number of persons are interested, may in equity be allowed his or her compensation out of the whole fund, only where the attorney's services are rendered on behalf of, and are a benefit to, the common fund.

2. **Actions: Subrogation: Attorney Fees.** Where the holder of a subrogation right does not come into the action, whether he or she refuses to do so or acquiesces in the plaintiff's action, but accepts the avails of the litigation, he or she should be subjected to his or her proportionate share of the expenses thereof, including attorney fees.

3. **Statutes: Appeal and Error.** To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.

4. **Statutes: Legislature: Intent.** There are three types of preemption: (1) express preemption, (2) field preemption, and (3) conflict preemption. In all three cases, the touchstone of preemption analysis is legislative intent.

5. **Political Subdivisions: Statutes: Legislature: Intent.** Field preemption and conflict preemption arise in situations where the Legislature did not explicitly express its intent to preempt local laws, but such can be inferred from other circumstances.

6. **____: ____: ____: ____.** In field preemption, legislative intent to preempt local laws is inferred from a comprehensive scheme of legislation.

7. **Statutes: Legislature.** The mere fact that the Legislature has enacted a law addressing a subject does not mean that the subject matter is completely preempted.

8. **Political Subdivisions: Statutes: Legislature: Intent.** In conflict preemption, legislative intent to preempt local laws is inferred to the extent that a local law actually conflicts with state law.

9. **Statutes.** If a statute is in derogation of common law, it is to be strictly construed.

10. **Statutes: Intent.** The construction of a statute which restricts or removes a common-law right should not be adopted unless the plain words of the statute compel it.

11. **Statutes: Legislature: Intent.** In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

12. **Statutes.** It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.

13. **Statutes: Legislature: Presumptions: Judicial Construction.** In determining the meaning of a statute, the applicable rule is that when the Legislature enacts a law affecting an area which is already the subject of other statutes, it is presumed that it did so with full knowledge of the preexisting legislation and the decisions of the Nebraska Supreme Court construing and applying that legislation.

Petition for further review from the Court of Appeals, Pirtle, Chief Judge, and Moore and Arterburn, Judges, on appeal thereto from the District Court for Douglas County, Peter C. Bataillon, Judge. Judgment of Court of Appeals affirmed.

Michael T. Gibbons and Raymond E. Walden, of Woodke & Gibbons, P.C., L.L.O., for appellant.

Joshua J. Yambor and Stevie Chesterman, of Hauptman, O'Brien, Wolf & Lathrop, P.C., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

- 149 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
310 NEBRASKA REPORTS
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 310 Neb. 147

CASSEL, J.

## INTRODUCTION

This appeal presents a question of law: Does a statute granting an insurer the right of subrogation preempt a common-law rule allowing an attorney to collect a pro rata share of his or her fees from an insurer? Because the statutory language is silent as to attorney fees and there is no indication that the Legislature intended to restrict or preclude the common fund doctrine, we conclude that attorney fees are not within the field occupied by the statute. We affirm.

## BACKGROUND

### LAW AT ISSUE

Before summarizing the facts, we set forth the statute and common-law rule central to this appeal. The statute, Neb. Rev. Stat. § 44-3,128.01 (Reissue 2010), provides:

> A provision in an automobile liability policy or endorsement which is effective in this state and which grants the insurer the right of subrogation for payment of benefits under the medical payments coverage portion of the policy shall be valid and enforceable, except that if the claimant receives less than actual economic loss from all parties liable for the bodily injuries, subrogation of medical payments shall be allowed in the same proportion that the medical expenses bear to the total economic loss. For purposes of this section, it shall be conclusively presumed that any settlement or judgment which is less than the policy limits of any applicable liability insurance coverage constitutes complete recovery of actual economic loss.

[1,2] The common law implicated is known as the common fund doctrine. The common fund doctrine provides that an attorney who renders services in recovering or preserving a fund, in which a number of persons are interested, may in equity be allowed his or her compensation out of the whole fund, only where the attorney's services are rendered

- 150 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 310 Neb. 147

on behalf of, and are a benefit to, the common fund.[1] Thus, "where the holder of the subrogation right does not come into the action, whether he refuses to do so or acquiesces in the plaintiff's action, but accepts the avails of the litigation, he should be subjected to his proportionate share of the expenses thereof, including attorney's fees."[2]

We now provide context for the dispute.

Factual Background

Auto-Owners Insurance Company (the insurer) issued an automobile insurance policy to Charlyn Imes. The policy and an endorsement both contained a section on preserving the insurer's right to recover payments. The section of the endorsement addressed the right to recover disbursements made pursuant to medical payments coverage. This section stated in part that if the insurer makes a payment under the endorsement and the person for whom payment is made has a right to recover damages from another, the insurer will be entitled to that right and the person for whom payment is made shall transfer the right to the insurer and do nothing to prejudice it.

After Imes suffered injuries in a motor vehicle accident, the insurer made medical payments of $1,000 on her behalf. Imes retained Hauptman, O'Brien, Wolf & Lathrop, P.C. (the law firm), via a contingent fee agreement to pursue her claims against a negligent third party. Imes ultimately sued the negligent third party. She sought special and general damages, including medical expenses of $40,100.

Two months after the filing of the lawsuit, the insurer sent a letter to the negligent third party's insurance company. The insurer requested that its right of recovery be "considered, protected and satisfied" in the event the negligent third party's insurance company made payment. The letter further

---

[1] See *Walentine, O'Toole v. Midwest Neurosurgery*, 285 Neb. 80, 825 N.W.2d 425 (2013).

[2] *United Services Automobile Assn. v. Hills*, 172 Neb. 128, 133, 109 N.W.2d 174, 177 (1961).

stated: "Please be advised that [the insurer] will represent our subrogation interest for payment made on behalf of our insured. We will not honor any requests for attorney fees unless we expressly request their assistance in pursuit of our subrogation."

Eight months after filing suit, Imes settled for $48,200. The law firm asked the insurer to take a one-third reduction of its $1,000 medical payment subrogation interest in exchange for the law firm's efforts in obtaining a settlement from which the insurer may be reimbursed. The insurer refused to accept less than $1,000.

## Procedural Background

The law firm sued the insurer in county court. It alleged that its work in obtaining a recovery on behalf of Imes, including the insurer's subrogation interest in the claim, created a common fund; that the insurer benefited from the law firm's work; and that a fair and customary attorney fee under Nebraska common law was one-third of the amount recovered per the law firm's fee agreement with Imes. The law firm therefore sought recovery of $333.33 against the insurer.

The insurer filed an answer and set forth various affirmative defenses. The insurer also filed a counterclaim, seeking a declaration that it was entitled to the full $1,000 under § 44-3,128.01 and the terms of the insurance policy. Upon cross-motions for summary judgment, the county court sustained the law firm's motion and overruled the insurer's motion. The insurer appealed to the district court.

The district court affirmed the entry of summary judgment. The court stated that the statute "in no way limits or affects the Common Fund doctrine and the Common Fund doctrine in no way limits or affects section 44-3,128.01."

The insurer then appealed to the Nebraska Court of Appeals. In considering whether the common fund doctrine survived § 44-3,128.01, the Court of Appeals discussed the insurer's preemption argument. The Court of Appeals clarified that the

- 152 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 310 Neb. 147

issue was the law firm's entitlement to recover a reasonable attorney fee for its efforts in securing the insurer's subrogated medical payment and stated: "This is not a 'field' addressed by the statute, which states that an insurer is entitled to full recovery of its medical payments when policy limits have not been received (as opposed to a pro rata share when they have and not all economic losses have been recovered)."[3] The court recognized that the statute was silent as to attorney fees and stated that there was nothing in case law to indicate that the statute preempted the common fund doctrine. Thus, the Court of Appeals affirmed the district court's order.

The insurer filed a petition for further review, which we granted.

## ASSIGNMENTS OF ERROR

The insurer assigns three errors in its petition for further review, which can be distilled to one: The Court of Appeals erred in failing to determine that the common fund doctrine was preempted by § 44-3,128.01.

## STANDARD OF REVIEW

[3] To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.[4]

## ANALYSIS

The insurer has relied on preemption throughout the proceedings. Preemption typically arises in connection with federal law. Federal preemption arises from the Supremacy Clause of the U.S. Constitution and is the concept that state laws that conflict with federal law are invalid.[5] We have also

---

[3] *Hauptman, O'Brien v. Auto-Owners Ins. Co.*, 29 Neb. App. 662, 676, 958 N.W.2d 428, 439 (2021).

[4] *Peterson v. Jacobitz*, 309 Neb. 486, 961 N.W.2d 258 (2021).

[5] *Eyl v. Ciba-Geigy Corp.*, 264 Neb. 582, 650 N.W.2d 744 (2002).

- 153 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 310 Neb. 147

encountered preemption claims with respect to whether municipal ordinances[6] or township laws[7] were preempted by state law. And the concept of preemption can arise in the interaction of common law and statutory law.[8] That is the situation before us.

The common fund doctrine is a part of the common law. In 1866, Nebraska adopted the common law of England.[9] An equity court's authority over fees, including "the usual case . . . where through the complainant's efforts a fund is recovered in which others share," can be traced back to the English Court of Chancery.[10] But the common law is not immutable. No one has a vested interest in any rule of the common law, and the Nebraska Legislature has the power to abolish rights so long as no vested right is disturbed.[11]

The insurer argues that within the statutorily defined field of automobile liability insurance, § 44-3,128.01 preempts application of the common fund doctrine. Whether the common fund doctrine should apply under the specific circumstances of this case is not at issue[12]; instead, the limited issue before us is whether the doctrine is preempted by § 44-3,128.01.

[4-8] There are three types of preemption: (1) express preemption, (2) field preemption, and (3) conflict preemption. In

---

[6] See, e.g., *State ex rel. City of Alma v. Furnas Cty. Farms*, 266 Neb. 558, 667 N.W.2d 512 (2003).

[7] See *Butler County Dairy v. Butler County*, 285 Neb. 408, 827 N.W.2d 267 (2013).

[8] See *Spear T Ranch v. Knaub*, 269 Neb. 177, 691 N.W.2d 116 (2005). See, also, *Beren v. Beren*, 349 P.3d 233 (Colo. 2015); *WSC/2005 LLC v. Trio Ventures*, 460 Md. 244, 190 A.3d 255 (2018); *In re Estate of Hannifin*, 311 P.3d 1016 (Utah 2013).

[9] See Rev. Stat. ch. 7, § 1, p. 31 (1866), now codified at Neb. Rev. Stat. § 49-101 (Reissue 2010).

[10] See *Sprague v. Ticonic Bank*, 307 U.S. 161, 166, 59 S. Ct. 777, 83 L. Ed. 1184 (1939).

[11] See *Peterson v. Cisper*, 231 Neb. 450, 436 N.W.2d 533 (1989).

[12] See, generally, 1 Robert L. Rossi, Attorneys' Fees § 7:21 (3d ed. 2021).

- 154 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 310 Neb. 147

all three cases, the touchstone of preemption analysis is legislative intent.[13] Express preemption occurs when the Legislature has expressly declared in explicit statutory language its intent to preempt local laws.[14] That is clearly not the situation here. Field preemption and conflict preemption arise in situations where the Legislature did not explicitly express its intent to preempt local laws, but such can be inferred from other circumstances.[15] In field preemption, legislative intent to preempt local laws is inferred from a comprehensive scheme of legislation.[16] The mere fact that the Legislature has enacted a law addressing a subject does not mean that the subject matter is completely preempted.[17] In conflict preemption, legislative intent to preempt local laws is inferred to the extent that a local law actually conflicts with state law.[18]

[9-12] In determining whether the Legislature intended to preempt the common fund doctrine when enacting § 44-3,128.01, we are mindful of four principles of statutory interpretation and construction. First, if a statute is in derogation of common law, it is to be strictly construed.[19] Second, the construction of a statute which restricts or removes a common-law right should not be adopted unless the plain words of the statute compel it.[20] Third, in construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[21]

---

[13] *Malone v. City of Omaha*, 294 Neb. 516, 883 N.W.2d 320 (2016).

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *ML Manager v. Jensen*, 287 Neb. 171, 842 N.W.2d 566 (2014).

[20] *In re Trust of Shire*, 299 Neb. 25, 907 N.W.2d 263 (2018).

[21] *State ex rel. BH Media Group v. Frakes*, 305 Neb. 780, 943 N.W.2d 231 (2020).

- 155 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 310 Neb. 147

Last, it is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.[22]

Application of these principles leads to the conclusion that the Legislature did not intend to preempt or abrogate the common fund doctrine. This court specifically extended the common fund doctrine to an insurer's subrogation interest in 1961.[23] Thus, we applied the common law rule to an insurer's subrogation interest 30 years prior to the enactment of § 44-3,128.01.[24] The plain language of § 44-3,128.01 makes enforceable an insurer's right of subrogation for medical payments coverage under an automobile liability policy, but it is silent as to attorney fees. In light of this silence, the statutory language does not expressly abrogate the common law nor does the language lead to the conclusion that § 44-3,128.01 intended to restrict or preclude the common fund doctrine.

[13] The historical context of § 44-3,128.01 demonstrates that it was addressed to the validity of a specific type of subrogation clause and not to the common fund doctrine. In determining the meaning of a statute, the applicable rule is that when the Legislature enacts a law affecting an area which is already the subject of other statutes, it is presumed that it did so with full knowledge of the preexisting legislation and the decisions of the Nebraska Supreme Court construing and applying that legislation.[25] While statutes existed governing the topic of insurance, no statute specifically addressed the validity of a subrogation clause regarding medical payments coverage under an automobile insurance policy. By a 4-to-3 decision in *Milbank Ins. Co. v. Henry*,[26] this court upheld this type of

---

[22] *Id.*

[23] See *United Services Automobile Assn. v. Hills, supra* note 2.

[24] 1991 Neb. Laws, L.B. 224, § 1.

[25] *E.M. v. Nebraska Dept. of Health & Human Servs.*, 306 Neb. 1, 944 N.W.2d 252 (2020).

[26] *Milbank Ins. Co. v. Henry*, 232 Neb. 418, 441 N.W.2d 143 (1989).

- 156 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
HAUPTMAN, O'BRIEN v. AUTO-OWNERS INS. CO.
Cite as 310 Neb. 147

clause. The dissenting justices would have held the subrogation clause unenforceable as against public policy because, they reasoned, it made medical pay coverage illusory.[27] Section 44-3,128.01 was the Legislature's response to the validity of that type of subrogation clause.

For the sake of completeness, we digress to note that the legislation, as originally instituted, would have invalidated that type of subrogation clause. L.B. 224 was introduced to "prohibit an automobile insurance policy from containing a right of subrogation for the insurer to recover amounts paid on behalf of an injured person from any third party."[28] Because the statute, as adopted, is not ambiguous, we do not rely upon this legislative history. The plain language of the statute, in the context of our *Milbank Ins. Co.* decision, is sufficient.

## CONCLUSION

We do not read § 44-3,128.01 to effect a change in the common law with respect to the common fund doctrine and attorney fees. Because there is no preemption or abrogation, the county court properly entered summary judgment in favor of the law firm. The intermediate appellate courts correctly affirmed the judgment. We affirm the decision of the Court of Appeals.

AFFIRMED.

---

[27] See *id.* (Fahrnbruch, J., dissenting; White and Grant, JJ., join).

[28] Committee Statement, L.B. 224, Committee on Banking, Commerce and Insurance, 91st Leg., 1st Sess. (Feb. 4, 1991).